## GLUCKAUF v. URTON.

PLAINTIFF and one Davis entered into a contract by which the latter was to deliver to the former a certain quantity of lumber, at a certain price, within a certain time. Davis was also to purchase of plaintiff a mule team and harness for $1,000, to have the use of the team—though the possession was to remain in plaintiff until the team was paid for. Davis delivered some lumber, but not within the time, nor in the quantity agreed ; he also delivered other lumber on general account, and plaintiff advanced money from time to time. Davis then called on plaintiff for a settlement of their accounts, stating that he wished to know whether the team was paid for, so that he could sell it. No settlement was made ; but in speaking of selling the mules to defendant, plaintiff said to Davis, "Let Urton have them." Davis subsequently sold the mules to Urton, and plaintiff now sues for them : *Held,* that this remark, taken in connection with the accompanying circumstances, was an assent and authorization of a sale to Urton by Davis of the property as that of Davis, and upon such terms as they might agree on. See facts.

APPEAL from the Fifteenth District.

Replevin for four mules and their harness, with damages for their detention—the complaint alleging, among other things, that defendant had conspired with one Davis, and Requa, the teamster of plaintiff, and thus wrongfully got possession. The answer denies the allegations of the complaint, and sets up title to the property by purchase from Davis. The case was tried by the Court, and the following facts were found, to wit :

Plaintiff being the owner of the mules, entered into a contract in March, 1859, with Davis, by which he, Davis, agreed to deliver to plaintiff, at Oroville, 40,000 clear No. 1 Sugar Pine lumber, of various descriptions, for which plaintiff agreed to pay thirty-eight dollars per 1,000. Davis was to commence the delivery of the lumber on or before the first day of May following, in quantities not less than 5,000 per month and of not more than 10,000 per month. Plaintiff agreed to pay for the same as follows : two-thirds of the amount payable in three months from the day the whole 40,000 was delivered, and the balance in four months from delivery. In addition, it was also agreed by the party of the first part, that he would purchase of plaintiff the mule team and harness in controversy, and a wagon, for which he agreed to pay plaintiff $1,000.

Plaintiff agreed that Davis might have the use of the team, with a competent driver to be furnished by plaintiff, to be used by Davis in connection with his saw mill—it being understood that the possession of the team was to remain in plaintiff until paid for by Davis. There were some other covenants in the contract which are not material to the issue.

Under this contract, the team was sent by plaintiff to the mill of Davis, in care of a driver provided by plaintiff, and Davis commenced delivering lumber under his contract. He also delivered to plaintiff lumber of a different kind and of different quality on general account.

The contract for the delivery of the Sugar Pine lumber was not fulfilled by Davis ; and not sufficient of lumber on general account was delivered, over and above the advances made by plaintiff, to amount to $1,000. In the mean time, during the winter of 1859–60, the teamster first employed by plaintiff had left, and another man had been employed by Davis to drive the team. About the first of July, 1860, Davis sold the team and harness to defendant, Urton, *to satisfy a debt* of seven or eight hundred dollars due from Davis to Urton—the latter also paying some cash ; and plaintiff brings suit to recover the team or their value.

The value of the mules, with the harness, is eight hundred and fifty dollars. The use of the team since action commenced is of the value of one hundred dollars.

There is no direct covenant in the contract in evidence that plaintiff agreed to sell the team to Davis, but only an implied contract that he would sell when Davis had paid or was ready to pay.

At the time Davis sold the team to Urton, he, Davis, was solvent ; but by the loss of some large debts since that time he is now totally insolvent.

Davis, a short time before he sold to Urton, called upon plaintiff for a settlement of their accounts, stating that he had a chance to sell the team to Urton, and wished to know if the mules had been paid for so that he could sell them. Plaintiff said he had not time to settle then ; that his clerk was out, and the books could not be had ; but that Davis could " let him have them," alluding to the proposed sale to Urton. No settlement was made.

Gluckauf *v.* Urton.

Upon these facts, the Court below held that the terms of the contract were independent covenants ; and hence, that plaintiff never agreed to sell to Davis, and therefore, defendant, who stands in no better position than his vendor, cannot recover ; that Davis did not perform any one of the covenants was to make himself a creditor of plaintiff to the value of the team ; and further, even if the contract is to be construed as an entirety, and if it can be implied therefrom that plaintiff agreed to sell to Davis, still that this covenant was executory, and no sale was in fact made.  The Court also held that the conversation between plaintiff and Davis did not authorize the latter to sell the team as his own property to pay a preëxisting debt ; but was, at most, an authority to sell in the usual way as agent of plaintiff.  Judgment for plaintiff for return of the property, or its value, (eight hundred and fifty dollars) with one hundred dollars damages for detention in case return could not be had.  Defendant appeals.

*H. O. & W. H. Beatty* and *George Barstow,* for Appellant.

*Jos. E. N. Lewis,* for Respondent.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

We put a different construction on the facts found by the learned Judge below from that placed on them by him.  If Davis called on the plaintiff to know whether the mules had been paid for, so that he might sell them to defendant—there being unsettled accounts between the plaintiff and Davis—and plaintiff then said to Davis, " Let Urton have them," taking this remark in connection with the accompanying circumstances, it would seem to be an assent and authorization of a sale to Urton by Davis of the property as that of Davis, and of course, upon such terms as Davis and Urton might agree on.

Judgment reversed and cause remanded for a new trial.